BUSHMEYER *v.* McGARRY.

Opinion delivered April 13, 1914.

1. VENDOR AND PURCHASER—CONTRACT OF SALE—OFFER AND ACCEPTANCE.—Defendant wrote plaintiff offering to sell him certain land if plaintiff would send a draft for the purchase money to a certain bank in defendant's city, and agreeing to turn over a deed to the land and an abstract to the bank; where plaintiff answered defendant to send the abstract, and stating that he would have it examined and "proceed to close up the matter," the answer held to constitute an unconditional acceptance of defendant's offer. (Page 377.)

2. VENDOR AND PURCHASER—RIGHT OF PURCHASER TO EXAMINE ABSTRACT.—QUALIFIED ACCEPTANCE OF OFFER.—Where defendant offered to sell land to plaintiff, and turn over an abstract and deed to a certain bank, on condition that plaintiff send a draft for the purchase

money to the said bank, a request by the plaintiff to have the abstract sent to him for examination before paying the purchase price, did not render his acceptance qualified, since it is presumed in the absence of a stipulation to the contrary that the vendor intended to convey a good title, and the vendee will be given a reasonable opportunity to examine the title.   (Page 378).

3. CONTRACT OF SALE OF LAND—CHANGE OF PLACE AND MODE OF PAY-MENT.—Where plaintiff unconditionally accepted defendant's offer to sell land, a proposal by the plaintiff to change the mode and place of payment of the purchase money, will not affect the validity of the contract of sale. (Page 379.)

Appeal from Pulaski Circuit Court; *Guy Fulk*, Judge; affirmed.

*C. H. Shubert* and *Johnson & Gray*, for appellant.

The court erred in holding that the correspondence between the parties constituted an offer and an acceptance, creating a binding contract on the part of the plaintiff to purchase, and on the part of the defendant to sell, the property. It amounted to nothing more than proposals and counter proposals, none of which were ever unconditionally accepted by either party. 67 Ia. 678; 56 Am. Rep. 371; 63 N. E. 140; 195 Ill. 384; 21 Wis. 306; 91 Mo. 287; 141 Mo. 213; 27 Pa. Sup. Ct. 366; 66 Kan. 282; 93 N. W. 1072; 132 Mich. 461; 9 Okla. 605; 142 Cal. 399; 83 S. W. 1077; 185 Mo. 335; 106 N. W. 227; 75 Neb. 241; 97 N. W. 358; 17 S. D. 432; 84 S. W. 265; 119 U. S. 149; 30 L. Ed. 376; 101 U. S. 4350; 25 L. Ed. 822; Anson on Contracts (2 Am. ed.), 22; Parsons on Contracts (9 ed.), 475, 476.

*Bradshaw, Rhoton & Helm*, for appellee.

Not only was there an offer and acceptance, but this offer and acceptance was acknowledged and reaffirmed by appellant, both in his letters to appellee and by his actions in forwarding the abstract and the deed in blank to be made out in form to suit the appellee. 47 Ark. 519.

Appellee's request to have the plat and bill of assurance corrected for the purpose of making the title to the lots satisfactory to him, was not a new proposal, nor was it a variance in the terms and conditions of the con-

tract. When a vendor contracts to sell land, he impliedly warrants that he is the owner and has a good title to it; and the vendee, before paying the purchase price, has a reasonable time in which to investigate the title by having the abstract examined, and such corrections made as will insure to him a good title. Such details do not alter. the contract itself. 63 Ark. 548; 66 Ark. 433.

McCULLOCH, C. J. This is an action to recover damages resulting from defendant's refusal to perform a contract which it is alleged he entered into with plaintiff to sell and convey to the latter certain lots in the city of Little Rock. Damages are laid in the amount of the difference between the contract price of the lots and the market value thereof.

The case was tried before the court sitting as a jury, and the plaintiff recovered damages in the sum of $550, found to be the difference between the contract price and the market value of the lots, and the defendant appealed.

Plaintiff resided in Little Rock and the defendant in Oklahoma City, negotiations being conducted by correspondence through the mails.

The question presented in the case is whether or not the correspondence establishes a contract between the parties, it being insisted on behalf of the defendant (appellant) that the correspondence only shows an offer on his part to sell the property, which was withdrawn before unconditionally accepted by the plaintiff.

The correspondence was initiated by a letter of defendant to plaintiff, written from Oklahoma City, dated February 1, 1912, containing the following offer:

"Now, I will sell to you my addition, twenty-six lots clear, not incumbered, abstract O. K. to me. It would cost about seventy-five cents per entry on abstract and taxes for 1912, which will be about $21. Now, if you will send me draft for $2,600, State National Bank, Oklahoma City, I will sign the deed and turn over to the bank the deed signed and abstract, and you pay taxes 1912, and if

the seventy-five cent fee is any more I will pay it by sending my personal check to you.''

In reply to that letter, the plaintiff, through his agent in Little Rock, wrote the defendant a letter dated February 12, 1912, which it is claimed amounted to an acceptance of the offer and established a contract. That letter, however, was not received by defendant, and was returned to the writer.

Defendant sent plaintiff, by letter dated February 15, 1912, a renewal of his offer and asking for immediate reply. That letter was received by plaintiff's agent in Little Rock on February 17, and on that day the agent remailed to defendant the letter of February 12, which reads as follows:

''In reply to your letter of February 1, 1912, please send your abstract to me at once, at the address below. I will have same brought down to date and examined, and proceed to close up the matter with you. I will send you deed for your signature within a few days.''

In response to that letter defendant forwarded the abstract of title to a bank in Little Rock for delivery to plaintiff's agent, and on February 20 some one at the bank notified the agent of the receipt of the abstract of title and delivered it to said agent.

Plaintiff's agent, Mr. Ratterree, after having caused the abstract of title to be brought down to date, sent the defendant a letter in plaintiff's name as follows:

''We have received the abstract of title to your addition to this city; have had same brought down to date, and, after investigation, I find that in the bill of assurance, executed by you when they platted this land as an addition, by error in drawing same the addition was located on the wrong piece of land. I have, therefore, had prepared a new instrument to be signed by yourself and wife for the purpose of correcting the error in the bill of assurance, in order to get the plat located on the ground owned by you. It will be necessary to have this executed and placed on record. On further examination of the abstract, we find that Elizabeth McConnell owned the two

acres on which is located your west block, and the next
conveyance of same is made by William Ables and wife
and James H. McConnell to T. W. and G. S. McConnell,
and, being unable to find how Elizabeth McConnell parted
with her title, I have presumed that these others men-
tioned are her heirs, and that she had died in the mean-
time. If this be true, we should have some information
of some kind to establish this fact. Otherwise, there
would be a broken link as to that block. Thinking that
perhaps you had investigated this when you purchased,
and have the necessary information, I have had prepared
the deeds to be executed by you, conveying the property
to me, which you can execute and send with the amended
bill of assurance and draft attached for $2,600 to me. If
agreeable, would prefer that you send same to Peoples
Savings Bank of this city. If you are unable to furnish
information as to Elizabeth McConnell, perhaps you can
advise me of some one in the city who knew these people
and who could properly explain same. If you personally
know about the matter, please make affidavit as to same
and send with the other papers.''

On receipt of that letter defendant wired plaintiff
that the deal was off and that he had made other ar-
rangements for the sale of the property.

Further correspondence took place between the par-
ties, but defendant adhered to his contention that his
offer had not been unconditionally accepted and refused
to proceed further with the negotiations of sale.

The turning point in the case is whether or not the
letter of February 12, which was remailed to defendant
on the 17th, constituted an unconditional acceptance of
defendant's offer.

We are of the opinion that it did, and that this letter
establishes a contract which defendant may be compelled
to perform or respond in damages for his failure to do
so. The letter says, ''I will have same (the abstract)
brought down to date and examined, and proceed to close
up the matter with you. I will send you a deed for your
signature within a few days.'' Now, the words ''close

up the matter'' refer to consummation of the contract of sale, and not the negotiations. The negotiations ended with this letter of acceptance, and the language of that letter implies an acceptance of the terms and an agreement to close up the details or to perform the terms of the contract as soon as the abstract could be brought down to date and the title examined.

It is true the letter of acceptance introduces a change in the details, in that, instead of sending the draft for the price and receiving the deed and abstract together it is asked in this letter that the abstract be forwarded for inspection.

Now, that was not a substantial change in the terms, but merely a detail which the defendant promptly acceded to by forwarding the abstract as requested. It was not such a change as amounted to a qualification of the original offer, but it was an acceptance of the offer with this immaterial change with respect to the examination of the abstract. Under defendant's original offer the draft was to be sent first and the deed and abstract forwarded together. But plaintiff was not bound to accept the conveyance if the title proved to be unsatisfactory, and even if he had sent the draft and received the deed and abstract he would not have been bound to accept it, but could have demanded a refund of the money paid if the title had been shown, upon examination, to be imperfect. This being so, the matter of furnishing the abstract was merely a detail which did not change the terms of the contract, and, as before stated, defendant promptly acceded to the qualification and forwarded the abstract.

And even though the letter constituted a binding contract between the parties, the plaintiff was entitled to a reasonable time, before being called on to perform the contract, within which to examine the title.

Defendant's proposal did not specify the kind of deed he was to execute, but the law implies an agreement to furnish a good title.

"Where there is no stipulation to the contrary," said this court in *Tupy* v. *Kocourek,* 66 Ark. 433, "the law will presume, in a contract for the sale of lands upon a valuable consideration, that the vendor intended to convey a good title, and the vendee will not be compelled to pay his money and accept it, unless it is good."

In the letter of February 29 plaintiff proposed another slight change in the terms of the contract by asking defendant to forward the draft to Little Rock for collection through a bank there, instead of his sending the draft to Oklahoma City.

That, however, was a mere proposal of the plaintiff for this slight change in the details, but even if it be deemed material, it did not constitute a breach on the plaintiff's part of the contract or justify a breach on the part of defendant. The rights of the parties were fixed by the contract embraced in the former correspondence, and either one of them might ask concessions or changes without giving legal cause to the other to refuse to perform the contract as originally established.

"If an offer is accepted as made, the acceptance is not conditional and does not vary from the offer because of inquiries whether the offerer will change his terms, or as to future acts, or the expression of a hope, or suggestions, etc." 9 Cyc. 269.

After the contract was entered into the defendant had the right to insist upon a literal compliance with its terms, but the fact that the plaintiff asked a change in some of the details did not justify defendant in breaking the contract.

The same may be said with reference to the plaintiff's proposal in that letter that defendant accompany the deed by new bill of assurance. On that feature of the case, however, it may be said that plaintiff had the right to make that request of defendant, for the reason that there was an obvious error in the original bill of assurance and it was defendant's duty to correct that error as a part of the performance of his contract by the execution of a new instrument.

Our conclusion is that the evidence establishes a contract for the sale of the property, and defendant's breach thereof is undisputed. The evidence justified the assessment of the amount of damages awarded by the court, so the judgment is affirmed.